Jeffery CALDWELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 70846.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 16, 1991.

Lawrence B. Mitchell, on appeal only, Dallas, for appellant.

John Vance, Dist. Atty., and Patricia Poppoff Noble, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Justice.

Appellant, Jeffery Caldwell, was convicted of capital murder. Tex.Penal Code § 19.03(a)(6). At the punishment phase of Appellant's trial, the jury answered affirmatively the three special issues set forth in Article 37.071(b) of the Texas Code of Criminal Procedure.[1] The trial judge then sentenced Appellant to death as required by Article 37.071(e). Direct appeal to this court is automatic. Tex.Code Crim.Proc. art. 37.071(h).

When considered in the light most favorable to the verdict of the jury, the record in this case reveals the following facts. On Monday evening, July 25, 1988, police investigators discovered the partially decomposed bodies of Henry Porter Caldwell, Jr., his wife Gwendolyn Caldwell, and their daughter Kimberly Caldwell wrapped in blankets and stuffed into a camper-trailer parked behind the family's South Dallas home. Autopsies later revealed that Henry and Gwendolyn were each stabbed once through the heart; Kimberly suffered two stab wounds to the chest, one of which penetrated her heart. In addition, all three victims had been brutally beaten about the head with a blunt instrument.

Appellant was arrested for the murders the following morning and properly advised of his *Miranda* rights.[2] Later that day, Appellant made a voluntary statement to police in which he stated that he had accidentally stabbed to death his sister and

1. At the time of the instant case, Tex.Code Crim. Proc. art. 37.071(b) provided:

 On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury:
 (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

 (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
 (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

parents at approximately 6:00 a.m., Saturday, July 23. Appellant stated that the stabbings occurred after a violent confrontation with his father over his father's refusal to loan Appellant money to purchase insulin. Appellant's original confession, however, failed to account for the severe head injuries of all three victims and the fact that his sister had been stabbed twice. Furthermore, at trial there was evidence that, subsequent to his original confession, Appellant related several additional and conflicting versions of the events to relatives and others.

In his first point of error, Appellant argues that the trial court committed error in denying his request for additional time to voir dire prospective juror Theresa Hearn on special issue number three. See Tex. Code Crim.Proc. art. 37.071(b)(3). During Appellant's voir dire of Hearn, he thrice unsuccessfully challenged the venireperson for cause. When Appellant was notified by the trial judge that his time for voir dire had expired, the following colloquy occurred:

> DEFENSE COUNSEL: Your Honor, we request some additional time to talk to this juror further.
> THE COURT: Your request is denied.
> DEFENSE COUNSEL: Particularly about special issue number three.
> THE COURT: Ms. Hearn, will you step in the first door, and I will call you shortly.
> THE COURT: What says the State in regard to juror Hearn?
> THE STATE: Take her, Judge.
> THE COURT: What says the defense?
> DEFENSE COUNSEL: We're forced to use peremptory challenge number eight.

Both parties in this case concede—and the record so-reflects—that the voir dire examination was limited to thirty minutes for each side per individual venireperson. In his brief, Appellant concedes further that, "Certainly the record does not indicate that counsel for appellant at any time save and except as referred to herein objected to this limitation." Thus, Appellant does not complain of the trial judge's general time limitations on the voir dire; rather, he contends only that the trial judge erred in not allowing Appellant more time to examine venireperson Hearn on special issue three.

▆▆ The control of the voir dire examination is within the sound discretion of the trial judge, and it is well-settled that the trial judge's discretionary authority extends to imposing reasonable limitations on the time for which counsel may question the jury panel. *Allridge v. State*, 762 S.W.2d 146 (Tex.Cr.App.1988), cert. denied, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989); *Abron v. State*, 523 S.W.2d 405, 408 (Tex.Cr.App.1975); see also *Adams v. State*, 577 S.W.2d 717, 724 (Tex.Cr.App. 1979), modified, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). The discretion of the trial judge regarding control of the voir dire is not limitless, however; thus, the benefits achieved by accelerating the often lengthy voir dire process "must never be attained at the risk of denying to a party on trial a substantial right." *Smith v. State*, 703 S.W.2d 641, 645 (Tex.Cr.App. 1985).

▆▆ When an appellant challenges a trial judge's limitation on the voir dire process, the reviewing court must analyze the claim under an abuse of discretion standard, the focus of which is whether the appellant proffered a proper question concerning a proper area of inquiry. *Cockrum v. State*, 758 S.W.2d 577, 584 (Tex.Cr. App.1988), cert. denied, 489 U.S. 1072, 109 S.Ct. 1358, 103 L.Ed.2d 825 (1989) at 584; *Allridge*, supra at 163. If a proper question is disallowed, harm to the appellant is presumed because he has been denied the ability to intelligently exercise his peremptory strikes.[3] *Smith v. State*, 703 S.W.2d 641, 643 (Tex.Cr.App.1985); *Allridge*, supra at 163; *Cockrum*, supra at 584. Thus, in order to decide if the trial judge erred by disallowing an appellant's voir dire request, the reviewing court must first determine if the appellant proffered a proper question.

---

**3.** The right of a defendant to intelligently exercise his peremptory strikes is implicit in the constitutional right of representation under both the state and federal constitutions. See *Shipley v. State*, 790 S.W.2d 604, 607–8 (Tex.Cr. App.1990).

A "proper" question is one that seeks to discover a venireperson's views on an issue applicable to the case. *Guerra v. State,* 771 S.W.2d 453, 468 (Tex.Cr.App.1988), cert. denied, 492 U.S. 925, 109 S.Ct. 3260, 106 L.Ed.2d 606 (1989). However, a voir dire question that is so broad in nature as to constitute a "global fishing expedition" is not proper and may be prevented by the trial judge. *Smith v. State,* 703 S.W.2d 641, 645 (Tex.Cr.App.1985). In the case at bar, Appellant merely asked to question the venireperson on special issue three, without narrowing the scope of his proposed inquiry. Potentially, a wide range of specific questions—both proper and improper—could have been asked within this general subject area.[4] Given the broad nature of this request, it is impossible for this Court to determine whether the inquiry of Appellant would have been proper—i.e., both appropriately phrased and relevant. Unable to make this determination, this Court cannot find that the trial court abused its discretion in refusing Appellant's request for additional time.

■ Furthermore, even assuming Appellant's request to question Hearn on issue three was not overly broad, we nonetheless find no reversible error because Appellant never presented the trial judge with one or more specific *questions* on which she could make a ruling. In *Cockrum v. State,* supra at 584, we held:

> Because this Court applies the abuse of discretion standard, set out above, for deciding appeals concerning the *manner* of voir dire, it is essential that the record present this Court with a question which the trial judge has not allowed to be answered. If counsel refrains, for what ever [sic] reason, from asking a question, the judge is denied the opportunity to make a ruling. Thus, we are unable to review the correctness of a ruling which was never made. For appellant to have a cognizable point of error, the record must reflect a ruling which appellant wishes to challenge. See Tex.R.App.Pro. 52(a).

As this Court's decision in *Cockrum* makes apparent, there must be a question before there can be a proper question. In the case-at-bar, when Appellant's time for voir dire expired, he merely requested additional time, which the trial judge denied. Appellant's next statement simply informed the judge of the general subject on which Appellant wanted to question the venireperson. Thus, Appellant failed to preserve a reviewable error in two respects: first, he never presented the trial court with a specific question; second, he failed to obtain an adverse ruling as to that question. Having never framed a question, Appellant has preserved nothing for this Court to review. Consequently, we must leave the trial judge's ruling undisturbed. Point of error number one is overruled.

Appellant's second point of error alleges the trial court erred in excusing prospective juror Bert Chauveaux. The State's voir dire revealed that, if the jury found the defendant guilty of capital murder, the venireperson would then automatically answer yes to special issue number one at the punishment stage:

Q. [BY THE STATE]:
Back to question number one. I want to make sure I understand the answer you gave me previously on that. You told me that you could not presume the answer to number one to be no, that if you found someone intentionally taking two lives you would presume the answer to that to be yes.

A. Yes.

Q. You would automatically answer that question yes?

A. Yes.

Q. Are you sure about?

A. I am sure about that.

Q. This man here is an expert at words. I want to know if you flip-flop on me. I want to know where you are coming from.

A. I am sure about that. The answer automatically would be yes that there was deliberation if I found—if the jury

---

4. For example, when Appellant later questioned another venireperson on special issue number three, he asked more than ten questions concerning that subject.

found the defendant guilty of what this indictment says.

At this point, the State submitted the venireperson for cause. Appellant objected to the exclusion of Chauveaux on the ground that his testimony did not demonstrate a bias or prejudice against any phase of the law upon which the State was entitled to rely for conviction or punishment. Tex.Code Crim.Proc. art. 35.16(b)3. The trial court overruled Appellant's objection and excused the venireperson.

■ Appellant's first argument is that the trial court erred as a matter of law in excusing the venireperson because his voir dire testimony was favorable to the State and, therefore, the State had no basis upon which to challenge the venireperson for cause under Article 35.16(b)3.[5] We disagree. In *Gardner v. State*, 730 S.W.2d 675, 680 (Tex.Cr.App.1987), cert. denied, 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987) (emphasis added), we stated:

> More to the point is the question whether a finding of guilty would "automatically" dictate a result in the mind of the venireman as to special issues, without consideration of evidence brought forward at the punishment stage of trial, or further consideration of the guilt evidence as it relates particularly to resolution of those issues. For only upon manifesting an inability, once the issue of guilt has been resolved against the accused, to reconsider guilt evidence in the particular context of special issues, has a venireman demonstrated himself unable objectively to follow the law. *Such a venireman would certainly be subject to a State's challenge for cause, for clearly this is a "phase of the law upon which the State is entitled to rely for ... punishment."*

The rationale for our holding in *Gardner* rested on the fundamental premise that the State's role in our adjudicative system is more than mere advocate:

The State's interest is in fair and impartial jurors, in accord with our legal system's basic tenet to insure that every defendant is accorded a fair and impartial trial. The State seeks, or should seek, to uphold the integrity of the jury system. Therefore, the State is permitted to challenge a juror who cannot be fair and impartial....

*Nethery v. State*, 692 S.W.2d 686, 691 (Tex. Cr.App.1985), cert. denied, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986).

When venireperson Chauveaux's testimony revealed he was unable to reconsider the guilt evidence for purposes of answering the special issues at the punishment phase, the State had the right to challenge the venireperson for cause. Once challenged, it was within the purview of the trial court to sustain or overrule the challenge. As a matter of law, the trial court committed no error in excusing the venireperson.

■ Appellant's second argument is that, based on the facts of this case, the trial court abused its discretion in excusing venireperson Chauveaux for cause. Previous decisions of this Court have established that the appropriate analysis to be used by the trial court in disqualifying potential jurors is whether their views would prevent or substantially impair their duties as jurors to act in accordance with the trial judge's instructions and the oaths taken by the jury. *DeBlanc v. State*, 799 S.W.2d 701, 716 (Tex.Cr.App.1990), cert. denied, —— U.S. ——, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991); *Bell v. State*, 724 S.W.2d 780, 794 (Tex.Cr.App.1986), cert. denied, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987).

■ On appeal, we recognize that great deference must be given to the trial judge, who was in the best position to witness the responses of the prospective jurors and to

---

**5.** Texas Code of Criminal Procedure, article 35.-16(b) provides: A challenge for cause may be made by the State for any of the following reasons:

 \* \* \* \* \* \*

3. That [the juror] has a bias or prejudice against any phase of the law upon which the

State is entitled to rely for conviction or punishment.

evaluate their demeanor. In *Wainwright v. Witt,* 469 U.S. 412, 424–28, 105 S.Ct. 844, 852–54, 83 L.Ed.2d 841 (1985), the United States Supreme Court held:

> [D]eterminations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of catechism. What common sense should have realized experience has proved: many veniremen cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully apply the law.... [D]eference must be paid to the trial judge who sees and hears the juror.... [T]he question whether a venireperson is biased has traditionally been determined through voir dire culminating in a finding by the trial judge concerning the venireperson's state of mind. We also noted that such a finding is based upon a determination of demeanor and credibility that are peculiarly within the trial court's province. Such determinations are entitled to deference even on direct review.

See also, *DeBlanc v. State,* supra at 717. We will reverse a trial court's ruling on these issues only when the record demonstrates a clear abuse of discretion. *Ransom v. State,* 789 S.W.2d 572, 582 (Tex.Cr. App.1989), cert. denied, — U.S. —, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990).

■ In deciding whether the trial court clearly abused its discretion by excusing venireperson Chauveaux, we observe the specific facts of this case. The testimony excerpted above demonstrates the venireperson unambiguously stated he would automatically answer special issue number one "yes" in *any* case where it was shown the defendant intentionally killed more than one person in the same criminal transaction, regardless of the underlying circumstances. This statement followed a lengthy exhortation by the trial judge on the need for the jury to be able to reconsider the evidence adduced at trial—as well as any additional evidence brought forward at the punishment stage—before answering the special issues. Venireperson Chauveaux testified he was incapable of following the trial judge's instruction. We find the venireperson's admitted inability to consider afresh the evidence in answering special issue number one demonstrated a bias against the law sufficient to warrant his exclusion by the trial judge. Having found an adequate basis in the record to support the trial judge's decision to excuse venireperson Chauveaux, we find no clear abuse of discretion. Point two is overruled.

■ Appellant's third point of error states that the trial judge committed reversible error when she sustained the State's challenge for cause of venireperson Robert Hacker. The State challenged the venireperson after his testimony revealed he would require more evidence than one eyewitness to convict a defendant of murder:

Q. [BY THE STATE]: I need a definite answer from you. You say you think you need more than one [witness].

A. I would need more than one.

Q. Is there any equivocation in your mind on that?

A. No, sir.

Q. Lawyers are great at talking people in a position and I want to make sure I didn't talk you into this position.

A. No.

* * * * * *

Q. You understand what I am talking about, that even if you heard one eyewitness and you believed the witness beyond a reasonable doubt and that eyewitness' testimony proves the indictment beyond a reasonable doubt, you would still require additional evidence before you would return a verdict of guilty?

A. Yes.

Q. Any question about that?

A. No.

* * * * * *

Q. [BY DEFENSE COUNSEL]: Would you really not be able to—are you saying

that under no circumstance would you be able to base a verdict on the testimony of one witness?

A. No.

Q. Would it not depend on the quality of the testimony of that one witness and the credibility of that one witness?

A. No.

Q. What are you telling me?

A. That I would require more evidence than one witness.

Appellant contends that the trial judge's dismissal of venireperson Hacker was based on a nonexistent "one eyewitness rule" and, in addition, was an impermissible attempt by the State to disqualify the juror based on a particular fact situation. We reject both of Appellant's contentions.

In *Barnard v. State,* 730 S.W.2d 703, 712–14 (Tex.Cr.App.1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988), we held that the trial judge properly excused a venireperson who stated unequivocally, inter alia, that he could not convict the defendant of capital murder based solely on circumstantial evidence with no eyewitnesses. Similarly, in *Demouchette v. State,* 731 S.W.2d 75, 82–83 (Tex.Cr.App.1986), cert. denied, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987), a capital murder case, we held that a venireperson's statement that he could not convict the defendant solely based on circumstantial evidence was sufficient to sustain the State's challenge for cause. We have also held that a venireperson who testified he would require eyewitness testimony to convict "was thus excludable under Art. 35.16(b)(3), in that he had a bias or prejudice against an aspect of the law upon which the State was entitled to rely." *Marquez v. State,* 725 S.W.2d 217, 238 (Tex.Cr.App.1987), cert. denied, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987).

It is clear that the State's challenge of venireperson Hacker was not premised on a "one eyewitness rule," as such. Rather, it was founded solidly on Article 35.16(b)3, in that the venireperson's testimony demonstrated a bias against a phase of the law upon which the State was entitled to rely. Stated somewhat differently, the venireperson was properly challengeable for cause

since he would have held the State to a higher burden of proof than that required by law. To force the State to prove its case with more than one eyewitness is an even greater burden on the State than was extant in *Barnard* or *Demouchette,* and such a sentiment clearly subjected the venireperson to a challenge for cause.

Appellant alternatively contends that the questioning of the venireperson was an improper attempt to commit the venireperson to a specific fact situation— i.e., that the State would only offer one eyewitness. We disagree. The scope of the prosecutor's questioning was appropriate, regardless of whether the State ultimately offered the testimony of more than one eyewitness at trial. In *Barnard,* supra, we sustained the exclusion for cause of a venireperson on the ground that he could not convict solely on the basis of circumstantial evidence; this notwithstanding the fact that, at trial, the State brought forth an eyewitness to the murder. We find the trial judge committed no error in sustaining the State's challenge for cause of venireperson Hacker. Point of error three is overruled.

Appellant's fourth, fifth, and seventh points of error argue that the trial judge erred in refusing to instruct the jury as to the definitions of the terms "deliberately," "probability," and "criminal acts of violence," respectively, as used in the special punishment issues. We disagree.

Article 3.01 of the Texas Code of Criminal Procedure provides: "All words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common language, except where specially defined." This article applies to the terms "deliberately," "probability," and "criminal acts of violence." *King v. State,* 553 S.W.2d 105, 107 (Tex.Cr.App.1977), cert. denied, 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 793 (1978); see also, e.g., *DeLuna v. State,* 711 S.W.2d 44, 47 (Tex.Cr.App. 1986), cert. denied, 493 U.S. 900, 110 S.Ct. 259, 107 L.Ed.2d 208 (1989) (holding that it is "well-settled" that neither "deliberately" nor "a probability" need be defined in the court's charge to the jury); *Adams v.*

*State,* 577 S.W.2d 717, 730 (Tex.Cr.App. 1979), modified, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) (no definition of "criminal acts of violence" need be given to jury). Moreover, a trial judge's refusal to define these terms poses no constitutional problems. *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) (affirming the constitutional validity of article 37.071 as worded, and without reference to special definitions).

While we cannot say that a definition by the trial judge of one or more of these terms would not have been helpful to the jury, in the absence of statutory authority requiring such definitions, and in light of the manifold precedent holding that no definitions are required as a matter of law, we decline Appellant's invitation to re-enter these murky waters. Appellant's fourth, fifth, and seventh points of error are overruled.

 In his sixth point of error, Appellant argues the trial judge committed error in denying Appellant's special requested instruction regarding the use of the term "society" as set forth in Article 37.071(b)(2) of the Texas Code of Criminal Procedure.[6] Appellant's rationale for this assertion is that, because the jury was instructed to disregard any consideration of parole, its consideration with regard to Appellant's continuing threat to society should have been necessarily limited to the "society" that exists within the penal system of the State of Texas. Appellant contends that the trial judge's failure to include the instruction impermissibly allowed the jury to determine whether Appellant would be a continuing threat to society in general, as opposed to the society within the penitentiary system where the defendant was to be incarcerated. Appellant's authority for this novel proposition is our decision in *Rougeau v. State,* 738 S.W.2d 651, 660 (Tex.Cr.App.1987), cert. denied, 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 901 (1988), from which Appellant cites the following passage:

> [I]n deciding whether to answer the second special issue in the negative the jury would clearly focus its attention on the "society" that would exist for the defendant and *that* "society" would be the "society" that is within the Department of Corrections.

As noted above, Article 3.01 of the Texas Code of Criminal Procedure provides that, unless specifically defined, all words and phrases used in the Code are to be construed as normally accepted in common language. In *King v. State,* supra at 107, we held that the phrase "continuing threat to society," as used in Article 37.071(b)(2), required no special definition in the charge to the jury at the punishment stage of a capital murder trial. In *Rougeau,* supra at 660, we noted that the jury was free to give the term "society" its ordinarily accepted meaning in common language. We further noted that "society" is a term that is usually dependent on the context in which it is used. *Id.*

We reject Appellant's assertion that a special instruction is needed to apprise the jury of the context within which it should define the term "society." In *Rougeau,* we noted that during its consideration of special issue number two, "the jury would *clearly focus* its attention on the society ... within the Department of Corrections." *Id.* (emphasis supplied). Consequently, the

---

**6.** The Appellant submitted the following requested instruction to the trial court regarding special issue number two:

> The prosecution must prove beyond a reasonable *doubt* that there is a probability that the defendant will commit criminal acts of violence on a continuing basis.
>
> \* \* \* \* \* \*
>
> To answer Special Issue #2 "yes," you must find that the defendant's violent conduct will probably continually threaten society as long as he lives. Thus, if you do not believe that it is substantially more likely than not that the defendant will continue to commit violent crimes, you must answer Special Issue #2 "no," even if you believe there is some probability that he will commit one or more criminal acts of violence in the future.
>
> When you decide whether the defendant will continually commit violent crimes, you must consider the fact that he will be sentenced to life in prison and will therefore not live among society in the free world. Thus, if you believe that the defendant will not continually *commit* violent crimes in prison, you must answer Special Issue #2 "no," even if you believe there is a likelihood he would do so as a free man.

jury is fully able to answer special issue number two in a fair and unprejudiced manner without reference to a special instruction. Point of error number six is overruled.

■ Appellant argues in point of error number eight that the trial judge erred in refusing his requested instruction concerning expert testimony on future dangerousness based on a hypothetical question. Appellant concedes that the expert testimony regarding the hypothetical question was admissible [7] but contends the trial court erred by not properly instructing the jury regarding (1) the jury's duty to disregard the testimony if there was a sufficient discrepancy between the evidence and the hypothetical question; and (2) the reliability and credibility of the expert's testimony. Appellant cites this Court to no relevant authority in support of this point of error.

Article 37.071(c) of the Texas Code of Criminal Procedure provides that, "The state must prove each issue submitted [under 37.071(b)] beyond a ·reasonable doubt...." Upon review, we find that the trial court's charge sufficiently instructed the jury regarding the State's burden of proof, with regard to all three special issues.[8] *O'Bryan v. Estelle*, 714 F.2d 365, 387 (5th Cir.1983), cert. denied, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984) (holding that a charge instructing the jury that the State bore burden of proving defendant's future dangerousness beyond a reasonable doubt satisfied constitutional requirements).

Moreover, we have repeatedly held that it is not proper for a trial judge to single-out certain testimony and comment on it via a special instruction to the jury, as such an instruction constitutes an impermissible comment on the weight of the evidence. For example, in *Laws v. State*, 549 S.W.2d 738, 740 (Tex.Cr.App.1977), we held that the trial judge did not err in refusing to submit an instruction concerning the jury's duty to acquit if it had a reasonable doubt that the defendant was mistakenly identified, as such instruction would have singled-out a specific part of testimony. Similarly, in *Chambers v. State*, 700 S.W.2d 597, 599 (Tex.Cr.App.1985), we held that the trial judge properly refused to instruct the jury on the weight to give deposition testimony, because such an instruction would have been an impermissible comment on the weight of the evidence. See also, *Shippy v. State*, 556 S.W.2d 246, 251 (Tex.Cr.App.1977), cert. denied, 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977). The trial judge's general instruction regarding the appropriate standard by which the jury was to weigh the testimony of the State's witnesses was adequate. Point of error number eight is overruled.

■ In his ninth, and final, point of error, Appellant argues that the trial judge erred in failing to grant a mistrial on the grounds that the comment of the State during final argument at the guilt phase of the trial violated the provisions of Article 38.08 of the Texas Code of Criminal Procedure [9] and the instruction to disregard did not cure the harm. The portions of the State's argument relevant to Appellant's point of error are as follows:

7. See *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983).

8. The trial court's charge to the jury reads, in relevant part, as follows:
 You are instructed that in answering the special issues, which you will show in your verdict, you may take into consideration all the facts shown by the evidence admitted before you in the full trial of this case, and the law as submitted to you in this charge and the charge heretofore given to you by the Court.
 The burden of proof is on the State to prove each issue submitted to you beyond a reasonable doubt. If the State does not prove an issue beyond a reasonable doubt or if you

have a reasonable doubt thereof, then you shall answer the issue or issues "No."

\* \* \* \* \* \*

You are the exclusive judges of the facts proved, the credibility of the witnesses and the weight to be given the testimony, but you are bound to receive the law from the Court which is herein given to you and be governed thereby.

9. Article 38.08 provides:
 Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause.

[BY THE STATE]: You have had a chance to sit here this whole trial, listen to the evidence, look at the demeanor of the witnesses on the stand. And you have had chance [sic] to look at everything. See any remorse in this courtroom other than comes from the—

[DEFENSE COUNSEL]: Objection, Your Honor, that's a direct comment on the defendant's failure to testify.

THE COURT: Overruled.

[DEFENSE COUNSEL]: Note our exception.

At the conclusion of the State's argument, the trial judge reversed, sua sponte, her earlier ruling on Appellant's objection:

THE COURT: Mr. Lollar, your first objection is sustained, and the jury is instructed to disregard any comment by the prosecution regarding what the defendant may or may not have shown during the trial and in the courtroom.

In *Dickinson v. State*, 685 S.W.2d 320, 323 (Tex.Cr.App.1984), we set forth the criteria to be used in assessing whether a prosecutorial comment violates Article 38.-08:

It is now well settled in this State that for the argument or comment of the prosecuting attorney to offend against Art. 38.08, supra, the language used must be looked to from the standpoint of the jury, and the implication that the language used had reference to the accused's failure to testify must be a necessary one. It is not sufficient that the language used might be construed as an implied or indirect allusion thereto. The test employed is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. Of course, in applying this test, the facts and circumstances of each case must be analyzed to determine whether the language used was of such character.

In applying the *Dickinson* standard, the objectionable comment must be analyzed from the standpoint of the jury. Appellant suggests that the jury would have interpreted the comment as an impermissible reference to the Appellant's nontestimonial demeanor. That is certainly one possible interpretation. And in a case such as this one, where the defendant has invoked his privilege against self-incrimination, a comment concerning his nontestimonial in-court demeanor would have been a manifest violation of that right. *Dickinson*, supra. This is true because the comment directly focuses the jury's attention on the defendant's personal feelings of remorse—evidence the defendant can only supply through his own testimony—which, in turn, necessarily implicates the defendant's failure to testify. *Id.* A reference to a defendant's neutral nontestimonial courtroom demeanor is equally improper if it is made in order to create an unreasonable inference of guilt. *Good v. State*, 723 S.W.2d 734 (Tex.Cr.App.1986).

However, given the ambiguous nature of the prosecutor's comment in this case, that comment is reasonably open to at least one other construction. The jury could have reasonably interpreted the statement as a reference to *testimony* presented in the courtroom concerning Appellant's lack of remorse. Indeed, there was copious testimony by various witnesses concerning Appellant's apparent lack of remorse following the murders, including: Appellant's calm demeanor between the time of the murders and his apprehension by the authorities, Appellant's three-day spree of illicit drug use immediately following the murders, the purposeful mendacity of Appellant concerning the whereabouts of his parents prior to the discovery of their bodies, and Appellant's varied and conflicting accounts of the murders.[10] See *Davis v. State*, 782 S.W.2d 211, 222–23 (Tex.Cr.App. 1989), cert. denied, —— U.S. ——, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990) (holding that comment on lack of remorse that was based on evidence adduced at trial was not error; rather, it was proper summation of the evidence).

Given these two different, but equally plausible, interpretations of the prosecu-

---

**10.** This Court does not endorse either of the above-stated interpretations of the prosecutor's comments, but merely notes them as illustra-

tions of the patent ambiguity of the unfinished statement.

tor's truncated comment, we hold that the objectionable portion of the prosecutor's statement ("See any remorse in this courtroom other than comes from the—") does not meet the *Dickinson* criteria outlined above. In other words, the statement would not *necessarily* and *naturally* be understood by the jury to refer to Appellant's failure to testify; nor is there a necessary implication that the statement referred to Appellant's failure to testify. Consequently we find the prosecutor's comment does not give rise to reversible error.[11]

■ Moreover, even assuming, arguendo, that the State's argument alluded to Appellant's failure to testify, we hold that on the facts of this case any error caused thereby was cured by the trial judge's instruction to the jury to disregard any comments regarding Appellant's in-court demeanor. Our decision is harmonious with the general rule providing that harm caused by an improper remark during argument can be cured by an appropriate instruction to disregard, unless the remark is so inflammatory that its prejudicial effect cannot be effectively removed. *Bower v. State*, 769 S.W.2d 887, 907 (Tex.Cr.App. 1989), cert. denied, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989); *Jones v. State*, 693 S.W.2d 406, 409 (Tex.Cr.App. 1985). After a careful review of the record, as well as our analysis of the ambiguous nature of the prosecutor's comment, we hold that this comment was not so objectionable that it could not be cured by an instruction to the jury to disregard. Point nine is overruled.

The judgment of the trial court is AFFIRMED.

---

11. In reaching this conclusion, we distinguish this Court's opinion in *Good v. State*, 723 S.W.2d 734 (Tex.Cr.App.1986) (holding that a lengthy and relentless diatribe directed at defendant's in-court demeanor during final argument improperly focused on the defendant's neutral nontestimonial demeanor and thereby created an unreasonable inference of guilt). In *Good*, the prosecutor's invective was a manifestly unjust appeal to the jury to convict the defendant based on his irrelevant nontestimonial appearance and was clearly outside the scope of appropriate final argument. By contrast, in the case-at-bar, the complained-of statement was short, unfinished, and ambiguous.