# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00446-CR
NO. 03-11-00447-CR
NO. 03-11-00448-CR

**Jeffrey Schott, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NOS. D-1-DC-10-300946, D-1-DC-10-300947, & D-1-DC-11-904015
THE HONORABLE DAVID CRAIN, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted Jeffrey Schott of the felony offenses of burglary of a habitation, credit card abuse, and unauthorized use of a vehicle. *See* Tex. Penal Code Ann. §§ 30.02(a)(1), (3), 31.07(a), 32.31(b)(1)(A) (West 2011). The jury assessed his punishment at confinement for 11 years in the Institutional Division of the Texas Department of Criminal Justice on the burglary charge, six months in a state jail facility on the credit card abuse charge, and six months in a state jail facility on the unauthorized use of a vehicle charge. *See id.* §§ 12.33, 30.02(c)(2), 31.07(b), 32.31(d) (West 2011), 12.35 (West Supp. 2012). The jury recommended that both state jail sentences be suspended and that Schott be placed on community supervision for those two offenses. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 4 (West Supp. 2012). Schott appeals his convictions, raising two points of error. We affirm the judgments of the trial court.

**BACKGROUND**

Schott, a former Marine, dated Teri Arnold, a clinical social worker at a local Austin school, for approximately nine months. Their romantic relationship ended in January 2010. One morning in early May, five months after they broke up, Arnold opened her apartment door to leave for work and encountered Schott brandishing what was she believed to be a gun. Schott pushed Arnold back into her apartment, telling her to get back and not say anything, and locked the door behind him. Arnold testified that she felt threatened by the gun. She described Schott as "visibly amped up," angry, and irrational; his demeanor scared her. Schott took Arnold's purse from her, removed her cell phone and car keys, and put them in his pocket. Arnold lunged for the door in an attempt to escape, but Schott grabbed her arm pulling her back.

Schott told Arnold that he wanted answers about their relationship. He then pushed her back into her bedroom where he again expressed that he wanted to talk. Arnold feared that Schott had taken her to the bedroom to do something "drastic" like kill her. She convinced Schott to move into the living room to talk. Schott sat on the couch next to Arnold, placing the gun on an end table next to where he was seated. He sat with Arnold on the couch, questioning her about their relationship and why it failed. He appeared sad and, at times, cried. Arnold worried that Schott might hurt her and then himself. At one point, Schott calmed down so Arnold asked him to put the gun away. He eventually complied, putting the gun in his backpack propped up against the end table, out of immediate sight but within reach.

About an hour and a half after Schott arrived at her apartment, Arnold's coworker called her cell phone to check on her because she had not shown up for work. When Arnold's phone

2

rang, Schott took the phone out of his pocket. He recognized the caller but did not answer. Instead, he sent a text message from the phone, pretending to be Arnold, informing the coworker that Arnold would not be in that day. Schott also sent an email from Arnold's laptop using her email account conveying the same message.

After the call, Schott and Arnold continued sitting on the couch talking for several more hours. Although Schott appeared calmer and at one point allowed Arnold to get a drink of water from the kitchen, Arnold testified that she never felt comfortable with the situation. As the afternoon progressed, Schott began talking about how he was going to get out of the situation. He indicated that he might leave the country. During that portion of the conversation, Schott told Arnold that the gun was an air gun. Although Arnold did not know what an air gun was and was uncertain that Schott was telling the truth, this information gave her hope that she could get out of the situation safely.

After extensive discussions about Schott's plans, the two were in the kitchen when Schott suddenly picked Arnold up, carried her to the bedroom, and dropped her on the bed. Arnold noticed that Schott had duct tape in his hands. Since she did not have any duct tape in her apartment, she assumed Schott had brought it with him. She said that Schott explained to her that he had to tie her up so he could get away before she called the police. Arnold struggled with Schott and began to cry. Schott climbed on top of her, held her down, and wound duct tape around her wrists. Arnold complained to Schott that the tape was tight, hurting her, and pleaded with him to stop. Apparently changing his mind, Schott stopped trying to bind her, and removed the tape from her wrists.

3

They returned to the couch in the living room where Schott continued to discuss his plans. At one point, while Arnold remained sitting on the couch, Schott moved to the floor to use her laptop where she could not see the screen. He told Arnold to leave the room. She complied and went to her bedroom. Several minutes later, Schott told Arnold she could return to the living room. When she did, Schott was preparing his things to leave and expressed his intent to duct tape her again. Arnold pleaded with him not to, but Schott forced her back to the bedroom. Before he could start taping her up, however, Arnold's cell phone rang. When Schott pulled the phone from his pocket, he remarked to Arnold that the Austin Police Department was calling. He abandoned his plan to bind her, collected his things with a panicked look, and left.

Arnold followed Schott to the living room and watched him leave the apartment. She waited until she was sure he was gone, then retrieved her purse and spare car key. Because Schott had taken her cell phone, she planned to drive to the leasing office in her apartment complex to call the police. However, when she went outside she could not find her car. Overwhelmed, Arnold began crying and ran to the leasing office where she called the police. When the police arrived, they asked to see her ID. At that point, Arnold discovered that her credit cards were missing from her wallet. Communications with the credit card company revealed that one of the cards had been used while Schott was in her apartment—without Arnold's knowledge or permission.

Based on purchases made with Arnold's credit cards, law enforcement officials tracked Schott to the airport in Houston and apprehended him in the security screening area. Schott had boarding passes for two flights: a flight from Houston to San Francisco and a second flight from San Francisco to Taiwan. Inside his backpack, he had two credit cards issued to Arnold and two

4

international travel books. Arnold's car was recovered from the airport parking lot. Arnold testified that they had not discussed him taking her car at any point during their conversations, nor had she given him permission to do so.

They jury found Schott guilty of burglary of a habitation, credit card abuse, and unauthorized use of a vehicle. After hearing evidence about the complicated, and sometimes violent, nature of the relationship between Schott and Arnold, the jury assessed Schott's punishment at 11 years' imprisonment for the burglary of a habitation offense and six months confinement in a state jail for the other two offenses. The jury recommended that the state jail sentences be suspended and Schott be placed on community supervision. The trial court sentenced Schott in accordance with the jury's verdicts. This appeal followed.

## DISCUSSION

On appeal, Schott complains that the trial court erred in restricting the length of defense counsel's voir dire and in denying his request for an instruction on the offense of criminal trespass in the jury charge. We affirm the judgments of conviction.

### Time Limit on Voir Dire

In his first point of error, Schott asserts that the trial court improperly limited his voir dire to 45 minutes. He contends that this restriction prevented him from sufficiently exploring the panelist's views on issues relevant to the case.

*Length of Voir Dire*

Initially, we note that Schott's complaint appears to be based on a misreading of the record. While he complains that the trial court limited his voir dire to 45 minutes, the record reflects that defense counsel actually questioned the venire for approximately one hour and 45 minutes.

Defense counsel began his voir dire at approximately 4:07 p.m. The trial court informed defense counsel when he had used "an hour and 3 minutes." Defense counsel continued questioning the panel for about another half hour. At that point, the State asked to approach the bench. At the bench conference, the State objected to the length of defense counsel's voir dire questioning. The trial court remarked that defense counsel had been questioning the panel for "almost an hour and a half." Counsel requested additional time. When the court indicated it would allow five more minutes, counsel responded, "And I'm going to ask for another ten." The court replied, "Okay. Do what you've got to do."

After an additional 15 minutes passed, the trial court interrupted defense counsel indicating that "we're out of time." The parties approached for another bench conference during which defense counsel asked for further additional time. The trial court denied the request.[1] Defense

---

[1] In his brief, Schott refers to the following remarks made by the trial court:

Well, we started at 4:07 and it's 4:48 now, and I told you at 4:33 that I'd give you five more minutes, and actually you've had 15. That's what you said if I gave you five minutes, you'd ask for 10 more. So you are all out of time.

It is clear from record, however, that the trial court misspoke when giving the time during the bench conference. From notations in the court reporter's record, as well as comments from the jurors during questioning, it is clear that the trial court simply misread the time and the correct time was 5:48, not 4:48, and defense counsel was given additional time at 5:33 rather than 4:33.

6

counsel was permitted to make some brief closing remarks thanking the panel. The record reflects that the venire panel was excused so the court could address challenges for cause and take up individual questioning at 5:48 p.m.

*No Preservation of Error*

In order to preserve error, an appellant must show "that he was prevented from asking *particular* questions that were proper." *Sells v. State*, 121 S.W.3d 748, 756 (Tex. Crim. App. 2003) (emphasis in original); *Dewalt v. State*, 307 S.W.3d 437, 457 (Tex. App.—Austin 2010, no pet.). If an appellant does not actually frame a question to the trial court, nothing is preserved for review. *Caldwell v. State*, 818 S.W.2d 790, 794 (Tex. Crim. App. 1991), *overruled on other grounds by Castillo v. State*, 913 S.W.2d 529, 534 (Tex. Crim. App. 1995); *Dewalt*, 307 S.W.3d at 457. An appellant does not preserve error by informing the trial court of the general subject area from which he wishes to propound questions. *Sells*, 121 S.W.3d at 756; *Caldwell*, 818 S.W.2d at 794; *Dewalt*, 307 S.W.3d at 457; *see Dhillon v. State*, 138 S.W.3d 583, 589–90 (Tex. App.—Houston [14th Dist.] 2004, no pet.). "Potentially, a wide range of specific questions—both proper and improper—could [be] asked within [a proper subject] area." *Caldwell*, 818 S.W.2d at 794; *Dewalt*, 307 S.W.3d at 457. That the trial court generally disapproved of an area of inquiry from which proper questions could have been formulated is not enough to preserve error because the trial court might have allowed the proper question had it been submitted for the court's consideration. *Sells*, 121 S.W.3d at 756; *Dewalt*, 307 S.W.3d at 457.

In this case, the record does not reflect any particular questions that Schott sought to ask the venire but was prohibited from doing so. Defense counsel merely indicated that: (1) he

needed to follow up with six jurors about their previously discussed "opinions regarding the punishment of being in prison," (2) he wanted to further discuss "issues about defendant not testifying," and (3) wanted to follow up with 18 jurors "regarding their opinions on the one witness rule." At no point did Schott clearly proffer a question or a complaint encompassing a specific question, that was relevant to, if not dispositive of, a legitimate defensive challenge for cause. *See Fuller v. State*, 363 S.W.3d 583, 588 (Tex. Crim. App. 2012) (objection made to trial court's ruling "embraced a complaint that [appellant] was denied the right to ask a question that was 'proper . . . for purpose of making [a] . . . challenge for cause'"). Counsel simply narrated general subject areas he wanted to explore, but failed to inform the trial court of any questions he wanted to ask. He therefore never obtained a ruling from the trial court on whether the follow-up questions that he had intended to ask were proper. Because Schott did not show that he was prevented from asking specific proper questions, he failed to preserve error.

*Prolonged Voir Dire*

Moreover, even if error had been preserved, we could not conclude on this record that the trial court abused its discretion in failing to grant Schott additional time. The trial court has discretion to impose reasonable limits on the length of voir dire. *Caldwell*, 818 S.W.2d at 793. No bright-line rule identifies what amount of time allowed for voir dire is too short. *Wappler v. State*, 183 S.W.3d 765, 773 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). A reasonable time limitation for one case may not be reasonable for another case; thus, each case must be examined on its own facts. *Ratliff v. State*, 690 S.W.2d 597, 601 (Tex. Crim. App. 1985); *Wappler*, 183 S.W.3d at 773. The trial court's decision to limit voir dire is reviewed for an abuse of discretion. *Barajas*

8

*v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). Absent an abuse of discretion, we will not reverse the trial court's refusal to allow defense counsel additional time to question the venire panel. *McCarter v. State*, 837 S.W.2d 117, 119 (Tex. Crim. App. 1992); *Smiley v. State*, 129 S.W.3d 690, 696 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

When a defendant complains that he was not allowed to question the venire collectively, he demonstrates that the court's limitation of voir dire was an abuse of discretion by showing: (1) counsel did not attempt to prolong the voir dire; and (2) counsel was prohibited from asking proper voir dire questions. *McCarter*, 837 S.W.2d at 119. When a defendant's voir dire examination was terminated as he attempted to question venire members individually, the appellant must also show that a panelist whom counsel was prohibited from questioning actually served on the jury. *Id.*; *Ratliff*, 690 S.W.2d at 600. Here, Schott's voir dire was terminated while his counsel was asking questions of the panel collectively.

In deciding whether counsel attempted to prolong voir dire, we review the record to see if the questions counsel posed were "irrelevant, immaterial or unnecessarily repetitious." *Ratliff*, 690 S.W.2d at 599; *Tamez v. State*, 27 S.W.3d 668, 672 (Tex. App.—Waco 2000, pet. ref'd). Counsel has a duty to reasonably budget his time. *See Barrett v. State*, 516 S.W.2d 181, 182 (Tex. Crim. App. 1974); *Tamez*, 27 S.W.3d at 672. Counsel attempts to prolong voir dire where he asks repetitious questions. *See Ratliff*, 690 S.W.2d at 599. Though counsel may not be precluded from repeating questions asked by the court and prosecutor, he can be precluded where the prospective juror has clearly, unequivocally, and without reservation stated his position. *McCarter*, 837 S.W.2d

9

at 120–21. Further, a trial judge may prohibit questions that substantially repeat others posed by the same party. *Id.* at 120.

Here, the record contains sufficient information to support the conclusion that counsel did in fact attempt to prolong voir dire. At the beginning of his voir dire, counsel used approximately four percent of his time providing his personal information to the venire panel.[2] While a brief introduction is appropriate, the detailed information about family, hobbies, and childhood experiences that counsel provided went beyond a brief introduction. More importantly, counsel spent approximately 20 percent of his time questioning each juror of the venire, including those beyond the potential strike zone, about the employment of the juror's parents. These questions concerning parental employment were irrelevant and immaterial. Furthermore, after the trial court warned counsel that he had already used an hour, counsel asked questions covering topics already addressed by the State: feelings and opinions regarding guns and violence and the State's burden of proof. In fact, after spending approximately six percent of his time discussing the State's burden of proof with the panel, counsel later returned to the topic by propounding a hypothetical. The questions relating to the hypothetical, which took up an additional 25 percent of his time, were repetitious of the State's voir dire as well as counsel's own voir dire.

The record reflects that defense counsel questioned the venire for approximately one hour and 45 minutes—an hour more than the limitation Schott complains of on appeal. Further, the

---

[2] The record reflects that the State's voir dire covered approximately 61 pages of the record, while defense counsel's voir dire covered approximately 95 pages. The percentages discussed are calculated based on the number of pages counsel devoted to the topic in relation to the number of pages of counsel's entire voir dire.

10

record demonstrates that counsel prolonged voir dire by asking irrelevant, immaterial, and unnecessarily repetitious questions. Accordingly, we cannot conclude that the trial court abused its discretion in denying defense counsel's second request for additional time. We overrule Schott's first point of error.

## Lesser-Included-Offense Instruction

In his second point of error, Schott argues that the trial court erred in denying his request for an instruction in the jury charge on the offense of criminal trespass. He maintains that the evidence at trial, demonstrating a consensual entry into Arnold's apartment but subsequent refusal to leave after receiving notice to depart, supported the submission of such an instruction.

*The Two-Part Analysis*

Determining whether a defendant is entitled to a lesser-included-offense instruction requires a two-part analysis. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011); *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007). We first consider whether the offense contained in the requested instruction is a lesser-included offense of the charged offense. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *Hall*, 225 S.W.3d at 535. If so, we must decide whether the admitted evidence supports the instruction. *Goad*, 354 S.W.3d at 446; *Rice*, 333 S.W.3d at 144.

*Lesser-Included Offense Analysis*

"An offense is a lesser-included offense if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." *See* Tex. Code

11

Crim. Proc. Ann. art. 37.09(1) (West 2006). The first step of the analysis asks whether the offense requested is included within the proof necessary to establish the offense charged. *Rice*, 333 S.W.3d at 144; *Hall*, 225 S.W.3d at 531. This is a question of law, and it does not depend on the evidence to be produced at trial. *Rice*, 333 S.W.3d at 144; *see Hall*, 225 S.W.3d at 535 (adopting the cognate-pleadings approach for this step: "the elements and the facts alleged in the charging instrument are used to find lesser-included offenses."). As the Court of Criminal Appeals has explained:

> An offense is a lesser-included offense of another offense . . . if the indictment for the greater-inclusive offense either: 1) alleges all of the elements of the lesser-included offense or 2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced.

*Rice*, 333 S.W.3d at 144 (citing *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g)) (footnote omitted); *see also Hall*, 225 S.W.3d at 535. This functional-equivalence concept "requires courts to 'examine the elements of the lesser offense and decide whether they are functionally the same or less than those required to prove the charged offense.'" *McKithan v. State*, 324 S.W.3d 582, 588 (Tex. Crim. App. 2010) (quoting *Farrakhan v. State*, 247 S.W.3d 720, 722–23 (Tex. Crim. App. 2008)).

Criminal trespass can be a lesser-included offense of burglary of a habitation. *Goad*, 354 S.W.3d at 446. A person commits the offense of criminal trespass if he enters or remains on or in property of another, including a building, without effective consent, and the person had notice that the entry was forbidden or received notice to depart but failed to do so. Tex. Penal Code Ann.

§ 30.05(a) (West 2011).  A habitation inherently provides notice that entry is forbidden.  *Salazar*

*v. State*, 284 S.W.3d 874, 878 (Tex. Crim. App. 2009).

As relevant here, a person commits burglary of a habitation when the person, without

the effective consent of the owner, enters a habitation with the intent to commit theft or an assault;

or enters a habitation and commits or attempts to commit theft or an assault.[3]  Tex. Penal Code Ann.

§ 30.02(a)(1), (3) (West 2011).  The distinction between criminal trespass and burglary of a

habitation as charged here is Schott's mental state upon entry or his conduct after entry.  Burglary

of a habitation requires proof that Schott entered Arnold's apartment with the intent to commit theft

or an assault, or that he entered her apartment and committed or attempted to commit theft or an

assault.  *See id.*  Criminal trespass requires only proof that Schott entered Arnold's home without

her effective consent and that he had notice his entry was forbidden.  *See id.* § 30.05(a).

The State concedes in its brief, as it did at trial, that criminal trespass is a

lesser-included offense of burglary of a habitation as alleged in the indictment in this case.  However,

---

[3]	In four alternative paragraphs, the State charged Schott with entering a habitation without the effective consent of the owner, Teri Arnold:

- and attempting to commit or committing an assault against Teri Arnold;

- with intent to commit assault against Teri Arnold;

- and attempting to commit or committing theft of the keys, credit cards, or phone of Teri Arnold; or

- with intent to commit assault against Teri Arnold.

*See* Tex. Penal Code Ann. § 30.02(a)(1), (3) (West 2011) (defining offense of burglary of a habitation).

13

the criminal trespass statute defines two methods of committing criminal trespass: (1) forbidden entry—entry without consent when the person had notice that entry was forbidden—and (2) refusal to leave—remaining without consent after the person received notice to depart. *See id.* Schott's argument relates to the refusal to leave method of committing criminal trespass. He asserts that the evidence at trial demonstrated that he had been a frequent visitor to Arnold's apartment, at her invitation, during their dating relationship and argues that this evidence was sufficient for a jury to conclude that he had her consent to enter her apartment on this occasion. He then contends that Arnold's attempt to escape when she lunged for the door constituted evidence that he received notice to depart. He maintains that this evidence—of consensual entry but remaining after receiving notice to depart—supported a conclusion that he "overstayed his welcome" which entitled him to an instruction on criminal trespass.

We disagree. Evidence of consensual entry, with or without his subsequent refusal to leave, negates the element of entry "without the effective consent of the owner" of burglary of a habitation. Consequently, we do not find that criminal trespass committed by "overstaying his welcome"—that is, refusal to leave after receiving notice to depart—constitutes a lesser-included offense of burglary of a habitation as alleged. Burglary of a habitation does not allege all the elements of "refusal to leave" criminal trespass. Further, criminal trespass by refusing to leave after receiving notice to depart is not within the proof necessary to establish burglary of a habitation. The burglary offense alleges, and requires proof of, entry without the effective consent of Arnold. The criminal trespass elements of remaining without consent after receiving notice to leave, subsequent to consensual entry, are not the same as the nonconsensual entry required for burglary nor its

14

functional equivalent. The evidence of consensual entry and subsequent failure to depart that Schott describes does not establish criminal trespass as a valid alternative to burglary of a habitation; rather, it merely negates the burglary offense.

However, the other method of committing criminal trespass—forbidden entry—is established by proof of the facts of burglary of a habitation as Schott was charged, less proof of: the commission or attempted commission of assault, the specific intent to commit assault, the commission or attempted commission of theft, or the specific intent to commit theft. *See, e.g.*, *Goad*, 354 S.W.3d at 446. Presumably the State's concession that criminal trespass is a lesser-included offense of burglary of a habitation in this case refers to "forbidden entry" criminal trespass. Still, although conceding the first part of the analysis, the State disputes that the admitted evidence at trial supported the submission of an instruction on criminal trespass.

*Evidence Supporting Submission of Instruction*

The second step of the lesser-included-offense analysis determines if there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Rice*, 333 S.W.3d at 145; *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006). The evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Rice*, 333 S.W.3d at 145 (quoting *Hall*, 225 S.W.3d at 536); *Segundo v. State*, 270 S.W.3d 79, 91 (Tex. Crim. App. 2008). "[T]here must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Goad*, 354 S.W.3d at 446; *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003). We consider all of the evidence

15

admitted at trial, not just the evidence presented by the defendant. *Goad*, 354 S.W.3d at 446; *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). "'Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge.'" *Goad*, 354 S.W.3d at 446 (quoting *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). We may not consider "'[t]he credibility of the evidence and whether it conflicts with other evidence or is controverted.'" *Id.* at 446–47 (quoting *Banda v. State*, 890 S.W.2d 42, 60 (Tex. Crim. App. 1994)).

We disagree with Schott's contention that "it is far from unreasonable for a previously welcomed person to enter a residence through an opened door with an expectation of continued consent" under the circumstances reflected by the evidence in this case. The evidence reflects that the last prior consensual entry of Schott into Arnold's apartment was five months before his intrusion into the apartment on this occasion. Since that time, the dating relationship between Arnold and Schott ended. Further, contrary to Schott's assertion, the record does not reflect that he simply arrived at Arnold's door "unexpectedly and sallied inside." Rather, the evidence demonstrates that Schott forced his way into the apartment, gun in hand, pushing Arnold back, making her feel threatened, and placing her in fear. The evidence does not support the conclusion that Shott entered Arnold's apartment that morning with her consent but refused to leave after notice to depart.

Furthermore, even if such evidence existed, such evidence would not negate the theories of the greater offense of burglary of a habitation—the intent to commit assault or theft, or the commission or attempted commission of assault or theft—to enable a rational jury to conclude that he was guilty only of the lesser-included offense of criminal trespass. *See Stadt v. State*, 182 S.W.3d 360, 363 (Tex. Crim. App. 2005) ("'[I]f sufficient evidence of more than one theory of

16

the greater offense is presented to allow the jury to be charged on alternate theories [of the greater offense], the second prong of the [*Rousseau*] test is satisfied only if there is evidence which, if believed, refutes or negates every theory which elevates the offense from the lesser to the greater.'") (quoting *Arevalo v. State*, 970 S.W.2d 547, 549 (Tex. Crim. App. 1998)). In this case, what elevated the offense from the lesser to the greater was entering the apartment with the intent to commit an assault or theft, or the commission or attempted commission of an assault or theft after entering the apartment.

Schott fails to identify any evidence negating the burglary-of-a-habitation element alleged: the commission or attempted commission of assault, the intent to commit assault, the commission or attempted commission of theft, or the intent to commit theft. The State argues that none of the evidence at trial negates the additional burglary element. We agree. Schott did not testify in his own defense. However, Arnold testified that upon barging into her apartment with a gun in his hand, Schott indicated that he wanted to talk about their failed relationship. Arguably, this is some evidence that could negate that Schott entered the apartment with intent to commit either assault or theft. *See Goad*, 354 S.W.3d at 448 (citing *Schmidt v. State*, 278 S.W.3d 353, 364 (Tex. Crim. App. 2009)) (victim's testimony about what defendant said to her can be affirmative evidence of defendant's lack of intent which supports lesser-included-offense instruction). However, this evidence does not affirmatively negate or rebut the evidence of the commission or attempted commission of assault or theft—two alternative theories of the greater offense—and show he is guilty only of criminal trespass of a habitation. That Schott initiated his nonconsensual entry into Arnold's apartment to discuss their failed relationship does not negate or rebut the evidence of his

17

assaulting or attempting to assault her or his theft of her property after his forced entry in to her apartment.

In sum, the record does not contain evidence that would have permitted the jury to reach a rational conclusion that if guilty, Schott was guilty only of criminal trespass. Consequently, Schott was not entitled to an instruction on the lesser-included offense of criminal trespass. We overrule his second point of error.

**CONCLUSION**

For the above reasons, we affirm the judgments of conviction.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed:   April 30, 2013

Do Not Publish

18