# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-03-00092-CR

**Matthew Sledge, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. 9034012, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellant Matthew Sledge appeals his conviction for aggravated sexual assault of a child younger than fourteen (count one) and indecency with a child by contact (count two). *See* Tex. Pen. Code Ann. § 22.021 (West 2003), § 21.11 (West Supp. 2004). After the jury found appellant guilty of both counts, appellant elected punishment by the court. Because appellant had previously been convicted of sexual assault of a child, the trial court assessed mandatory punishment of confinement for life on each count, with the sentences to run concurrently. *See id.* § 12.42(c)(2) (West Supp. 2004).

On appeal, appellant raises six issues, alleging that the trial court erred by (i) admitting the testimony of a second outcry witness because both witnesses testified about the same incident; (ii) admitting hearsay testimony from a social worker because the statements were not made

for the purpose of medical diagnosis, *see* Tex. R. Evid. 803(4); (iii) denying appellant's request to include charge instructions for the lesser-included offenses of attempted aggravated sexual assault and attempted indecency with a child by contact; (iv) denying appellant's request for a mistrial after the prosecutor allegedly made an impermissible comment on appellant's failure to testify; and (v) denying challenges of four prospective jurors for cause and denying appellant's request for additional peremptory strikes. The State concedes appellant's remaining issue, that the convictions for aggravated sexual assault and indecency with a child by contact are based on the same act and therefore violate the double jeopardy clauses of the United States Constitution and the Texas Constitutions and the due course of law provisions of the Texas Constitution. Accordingly, we reverse count two of the judgment charging appellant with indecency with a child by contact and dismiss that count. As to appellant's other issues, because we find no reversible error, we affirm the conviction for aggravated sexual assault.

## BACKGROUND

The testimony at trial revealed the following. On the afternoon of March 23, 2001, six-year-old I.B. came home from school. Appellant, with whom I.B.'s family was living at the time, was there. I.B., who was eight years old at the time of trial, testified that she went into her mother's bedroom, changed clothes, and laid down to take a nap. At some point, appellant came into the bedroom and kneeled on the bottom of the bed. He then unzipped I.B.'s shorts and stuck his hand inside her panties. I.B. testified that appellant put his fingers inside her "monkey,"[1] and that it hurt.

---

[1] There is evidence that I.B. used "monkey" to refer to her vagina.

2

She asked appellant to stop but he continued until someone knocked on an outside door. Appellant got up, unlocked the door, then went into the bathroom. I.B. went to the door and opened it to find her mother and appellant's girlfriend.

I.B.'s mother, Katrina Nixon, testified that when she came into the house, she noticed that I.B. looked upset and asked her what was wrong. I.B. kept her head down, shaking her head. Nixon sat on the couch, put I.B. in her lap, and asked I.B. more questions. Appellant came into the room from the bathroom and sat in a chair. I.B., who was shaking, kept looking at appellant, then put her head down. Nixon then took I.B. into Nixon's bedroom and told I.B. that "she needed to tell me what was wrong." I.B. answered that "Papa," which was what she called appellant, peeked through the door when she was changing clothes. I.B. then became more upset and was still shaking. Nixon asked if appellant had touched her, and I.B. said yes. When Nixon asked where he had touched her, I.B. pointed to her "private area." Nixon asked if anything else happened, and I.B. said that appellant had gotten on top of her. Nixon "panicked" and arranged for someone to take her and her children to the house of a friend, Tina Carter.

At Tina Carter's house, Nixon took I.B. into Carter's bedroom and asked if Carter would listen to I.B. Nixon left them alone to talk; meanwhile, someone called the police. Carter, over appellant's objection to a second outcry witness, testified that I.B. told her that when she was in the bathroom, appellant laid her on the floor. I.B. also told her appellant undid her "unders" while lying on top of her, "put his fingers where they didn't go in her private area," and that it hurt.

Travis County sheriff's deputies arrived and took I.B., with her mother, to Brackenridge Hospital for an examination. There, Jennifer Inman, a social worker employed by the

3

hospital, conducted "psychosocial assessment" interviews of I.B. and Nixon. Inman testified, over appellant's objections of hearsay and improper outcry, that I.B. told her that appellant "hurt her and put his fingers in her pee pee." The emergency room doctor who examined I.B. testified that I.B. denied being touched or penetrated and that he found no physical evidence of penetration. Appellant did not testify on his own behalf. The jury convicted appellant on both counts.

## ANALYSIS

### *Outcry Witness Testimony*

In his first issue, appellant contends that the trial court erred in admitting the testimony of a second outcry witness. The court permitted both Katrina Nixon and Tina Carter to testify pursuant to code of criminal procedure article 38.072. *See* Tex. Code Crim. Proc. Ann. art. 38.072 (West 2004). Under this statute, the first adult to whom a child makes an outcry regarding physical or sexual abuse may testify to that outcry as an exception to the hearsay rule. *Id.* § 2. The statute has been construed to apply to the first adult to whom the child makes a statement that in some discernible manner describes the alleged offense. *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). A trial court has broad discretion in determining which of several witnesses qualifies as the outcry witness. *Id.* at 92. The exercise of that discretion will not be disturbed unless the record shows a clear abuse of discretion. *Id.* That is, we will not reverse unless the trial court's decision is outside the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)).

Multiple outcry witnesses can testify about separate instances of abuse committed by the defendant if each witness is the first person to whom the child victim relayed information about

4

the separate incidents. *Hernandez v. State*, 973 S.W.2d 787, 789 (Tex. App.—Austin 1998, pet. ref'd). "If the child described one type of abuse to one witness and a *different* type of abuse to the second listener, the second listener could testify about that distinct offense." *Id.* (citing *Turner v. State*, 924 S.W.2d 180, 183 (Tex. App.—Eastland 1996, pet. ref'd) (police officer could testify about victim's outcry about penile penetration because victim's previous outcry to counselor was about digital penetration)).

Nixon, who was the first witness at trial, testified as follows about I.B.'s statements:

| NIXON: | . . . I said did he touch you and she said, she just kind of shook her head yes and she said yes, and I said where. She said down there, and she pointed with her hand down to her private area. |
|---|---|
| [PROSECUTOR]: | You are referring to her vagina? |
| NIXON: | Yes. |
| [PROSECUTOR]: | She points down to that area? |
| NIXON: | Yes. |
| [PROSECUTOR]: | Okay. And did you ask her anything after that? |
| NIXON: | I asked her if anything else had happened, and she said her Papa had gotten on top of her, and after I heard that I just panicked and I just thought I had to get out of there, I had to get my kids out of there . . . . |

When the State called Tina Carter to testify, appellant's counsel requested a hearing outside of the presence of the jury. He then objected to Carter's testimony because the statute restricts outcry testimony to the first outcry witness to testify. The prosecutor responded that "[t]his outcry witness

5

is to the aggravated assault part of our indictment. The first outcry was to the indecency by contact."[2] The trial judge overruled the objection and allowed Carter to testify. Appellant's counsel did not request voir dire of Carter to determine the substance of her testimony.

Carter testified that I.B. told her that when she was in the bathroom, appellant laid her on the floor. I.B. also told her appellant undid her "unders" while lying on top of her, "put his fingers where they didn't go in her private area," and that it hurt.

Here, the trial judge had before him only the prosecutor's representation that Carter would testify about a separate count of the indictment,[3] without the benefit of hearing Carter's testimony on voir dire. Because Nixon's testimony about the touching only went to the indecency with a child by contact allegation and Carter's testimony was relevant to the element of penetration required to be proved in a charge of aggravated sexual assault, it would not be outside of the zone of reasonable disagreement for the trial judge to conclude that Carter would testify about a different type of abuse. Although we caution proponents of outcry testimony to confine such testimony to that clearly contemplated by the statute, we cannot say under these circumstances that the trial court's admission of evidence from a second outcry witness constituted an abuse of discretion. We overrule appellant's first issue.

_____

[2] The offense of indecency with a child by contact includes engaging in sexual contact of a child with the intent to arouse or gratify the sexual desire of any person. Tex. Pen. Code Ann. § 21.11(a) (West 2003). "Sexual contact" includes "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child." *Id.* § 21.11(c)(1) (West 2003). Aggravated sexual assault involving a child's sexual organ requires penetration of the child's sexual organ by any means. *Id.* § 22.011(a)(2)(A) (West Supp. 2004).

[3] Because a proffer of evidence must be made in good faith, it would be misconduct for the prosecutor to misrepresent the substance of the proffered testimony.

*Social Worker's Testimony*

In his second issue, appellant contends that the trial court erred in admitting the testimony of Jennifer Inman, a social worker employed by Brackenridge Hospital who interviewed I.B. and her mother when they came to the hospital on the night of the incident. Appellant contends that Inman's recounting of their statements constituted impermissible hearsay because the statements were not made for the purpose of medical diagnosis. *See* Tex. R. Evid. 803(4). Statements made for purposes of medical diagnosis or treatment describe "medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." *Id.*; *Moore v. State*, 82 S.W.3d 399, 404 (Tex. App.—Austin 2002, pet. ref'd). The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003) (citing *Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995)). Therefore, a reviewing court should not reverse unless a clear abuse of discretion is shown. *See Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994).

Inman testified that she is a licensed master's level social worker employed by Brackenridge Hospital, working primarily in the pediatric area. When she is in the emergency room, it is her responsibility to make "psychosocial assessments" of all of the children who come in for allegations of abuse or neglect. The assessments become a part of the medical record. The main purpose of the assessments is to "help the doctors out with their exams [and] help them know what type of tests they might need to order." She further testified that because in this instance law enforcement and child protective services had already been notified, her interviews of I.B. and her

7

mother were "very narrowly focused on getting information to help the doctor do the best medical exam for the child." Dr. John Bulett, the physician who examined I.B., testified that in making his diagnosis, he is "always taking whatever information [he] can get, including, especially, of course, the social service workers' findings."

As to the objected-to statements, Inman testified that she interviewed I.B.'s mother without I.B. present and asked why I.B. needed medical attention. The mother said that I.B. told her that "the 33 year old stepfather . . . had penetrated her digitally with his fingers and that he had tried to lay on top of her." Inman further testified that she interviewed I.B. alone, who said "Matthew hurt her and put his fingers in her pee pee." Inman then relayed the information to the doctor before he examined I.B.

Here, it is clear that Inman's role was similar to that of an intake nurse: to assess the patient's injury and inform the doctor of her assessment for the purposes of treatment and diagnosis. In light of the hospital setting and Inman's narrow role, as an employee of the hospital, to assist the doctor in conducting his medical examination, we conclude that these statements fall under the rule 803(4) exception. We hold that the trial court's ruling fell within its discretion; accordingly, we overrule appellant's second issue.

### *Instructions for Lesser-Included Offenses*

In his third issue, appellant contends that the trial court erred in refusing to charge the jury for the lesser-included offenses of attempted aggravated sexual assault and attempted indecency with a child by contact. We apply a two-pronged test for determining whether a jury must be charged on a lesser-included offense. First, we determine whether the offense is a lesser-included

8

offense of the offense charged. Tex. Code Crim. Proc. Ann. art. 37.09 (West 1981); *Hampton v. State*, 109 S.W.3d 437, 440 (Tex. Crim. App. 2003) (citing *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993)). Because an "attempt to commit the offense charged or an otherwise included offense" is a lesser-included offense, Tex. Code Crim. Proc. Ann. art. 37.09(4), the first step is satisfied.

The second step requires that the record contain some evidence that would permit a rational jury to find that the defendant is guilty only of the lesser offense. *Feldman v. State*, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002) (citing *Rousseau*, 855 S.W.2d at 672). "In applying the test, the trial court should make a determination as to whether the evidence of the lesser offense would be sufficient for a jury rationally to find that the defendant is guilty *only* of that offense, and not the greater offense." *Rousseau*, 855 S.W.2d at 673 (emphasis added).

In determining whether the trial court erred in failing to give a charge on the lesser-included offense, all of the evidence presented by the State and the defendant must be considered. *See Penry v. State*, 903 S.W.2d 715, 755 (Tex. Crim. App. 1995). If evidence from any source affirmatively raises the issue of a lesser-included offense, a defendant is entitled to an instruction thereon. *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994). It is not enough, however, that the jury may disbelieve crucial evidence pertaining to the greater offense. *Id.* Instead, "there must be some evidence directly germane to a lesser . . . offense for the fact finder to consider before an instruction is warranted." *Id.*; *see also Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997). Entitlement to a jury instruction on a lesser-included offense is on a case-by-case basis according to the particular facts. *Livingston v. State*, 739 S.W.2d 311, 336 (Tex. Crim. App. 1987).

9

If a defendant either presents evidence that he committed no offense or presents no evidence, and there is no evidence otherwise showing he is guilty only of the lesser offense, then a jury instruction on the lesser-included offense is not required. *Bignall*, 887 S.W.2d at 24; *Jones v. State*, 921 S.W.2d 361, 364 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd).

Here, the State presented evidence of indecency with a child by contact through four witnesses: Nixon, I.B., Carter, and Inman. It also presented evidence of penetration, required to prove aggravated sexual assault of a child in this instance, through I.B., Carter, and Inman. Dr. Bulett, whom appellant presented, testified that I.B. denied both touching and penetration. He found no physical evidence of a perforated hymen or penetration in his examination but qualified that it did not mean "that [I.B.] was not penetrated." The State's expert witness, Dr. Beth Nauert, testified that because the legal definition of penetration requires only penetration of the labia, penetration could occur without perforation of the hymen.

At the charge conference, the trial judge at first decided to include charges for attempt. After further argument, the trial judge decided to review the record on the issue. He then denied the request for instructions on attempt because there was "nothing that the Court can tell that the doctor's definition of penetration was penetration of the vagina or the legal definition, which is penetration of the labia majora, minora." From the doctor's testimony, the jury could have determined that touching and penetration occurred even though the doctor found no physical evidence. The jury also could have concluded that appellant was guilty of no offense, which would not require a lesser-included offense instruction. *Bignall*, 887 S.W.2d at 24. An attempt "tends but fails to effect the commission of the offense intended." Tex. Pen. Code Ann. § 15.01(a) (West

10

2003). With evidence presented of either no attempt or more than an attempt, a jury rationally could not find that appellant was guilty only of attempted indecency with a child by contact or attempted aggravated sexual assault. Accordingly, we do not find that the trial court erred in denying appellant's requests for instructions on the lesser-included offenses and overrule appellant's third issue.

***Comment on Failure to Testify***

In his fourth issue, appellant contends that the trial court erred in denying his request for a mistrial after the State in its closing statement allegedly made an impermissible comment on appellant's failure to testify. A prosecutor's comment on a defendant's failure to testify is prohibited by both the federal and state constitutions as well as Texas statutory law. *See* U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 38.08 (West 1979). *See also Nickens v. State*, 604 S.W.2d 101, 104 (Tex. Crim. App. 1980). For a statement to constitute a comment on the failure to testify, the argument when viewed from the jury's standpoint must manifestly be of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. *Caldwell v. State*, 818 S.W.2d 790, 800 (Tex. Crim. App. 1991). Language that might be construed as an implied or indirect allusion to the defendant's failure to testify will not necessitate a reversal. *Patrick v. State*, 906 S.W.2d 481, 490-91 (Tex. Crim. App. 1995).

The portion of the State's jury argument about which appellant complains is as follows:

Thank you, Judge. [I.B.] herself lying and so forth, but if it was a great stage [I.B.] would have to be a great actor. You heard the girl testify. You ask yourselves was

11

she lying. She talked to you in great detail about what happened to her. She had the dolls and she told you how he got on top of her, what he did, how she felt, she talked in great sensory detail. Can a child two years removed—when she was six years old. This is the child he molested, not the little girl you came in here and saw, this is the girl he did this to. This is her, and so is she lying? She couldn't even look at him, and I hope, I think some of you did take note of this defendant when she testified, he could not even look in her face. *This is a man sitting his liberty is at stake, having a right to confront the person who is making this allegation against him. He couldn't even look at her. You know why? You know why. You know why. He couldn't even look at her.*

Is she lying? You saw her.

(Emphasis added.) We do not agree that this is a comment on appellant's failure to testify. Framing the prosecutor's statements about appellant are questions about whether I.B. was lying when she testified. Thus, the prosecutor's comments directly pertained to I.B.'s credibility. At most, the prosecutor made an indirect allusion to appellant's failure to testify, which is insufficient to constitute reversible error. *Patrick*, 906 S.W.2d at 490-91. Because the comments, taken in context, were not of such a character that the jury would naturally and necessarily take them to be comments on the defendant's failure to testify, *Caldwell*, 818 S.W.2d at 800, we do not find that the trial court erred in denying appellant's request for a mistrial.

Appellant also contended at oral argument that these comments directed the jury's attention to appellant's courtroom demeanor, thus impermissibly commenting on material not in evidence.[4] We agree with the State's assertion in its brief that "commenting on the in-courtroom demeanor of a non-testifying defendant is an impermissible comment on material not in evidence." However, we cannot review this error because appellant failed to preserve it below. Tex. R. App.

---

[4] Although appellant did not raise this issue on appeal, the State addressed it in its brief.

12

P. 33.1(a). Appellant's motion for mistrial only pertained to the comment on appellant's failure to testify: "I move for a mistrial on the grounds—object and move for mistrial. [The prosecutor's] statement about him just sitting here, I think that is a comment on his failure to testify." Accordingly, we overrule appellant's fourth issue.

### *Jury Challenges for Cause*

In his sixth issue,[5] appellant contends that the trial court erred in denying challenges of four prospective jurors for cause and further erred in denying appellant's request for additional peremptory strikes. We must examine the record as a whole to determine whether there is support for the trial court's rulings; in doing so, we must "accord great deference to the trial judge who had the better opportunity to see and hear" the prospective jurors. *Swearingen v. State*, 101 S.W.3d 89, 99 (Tex. Crim. App. 2003). The trial court's ruling will not be disturbed absent a showing of an abuse of discretion. *Id.* (citing *Curry v. State*, 910 S.W.2d 490, 493 (Tex. Crim. App. 1995)).

#### *Venirepersons*

##### *(i) S. Gootman*

The basis for appellant's objection to venireperson Gootman is the following exchange, after the prosecutor asked if anyone would be uncomfortable serving on a jury involving child abuse:

---

[5] Appellant's fifth issue is that multiple convictions for a single act violate the protections against double jeopardy in the United States and Texas Constitutions. We need not address this issue because the State concedes that appellant's conviction on both counts constitutes double jeopardy.

13

GOOTMAN: Yeah, I served on a jury. I guess it was child abuse, I don't know but it was—it was really hard.

[PROSECUTOR]: And we all know it's a difficult situation, but do you think you could be a juror that would listen to all the facts before rendering a decision?

GOOTMAN: Yes, I did. I've been there—been there and done that and it just ran me through the wringer.

[PROSECUTOR]: Okay. Do you think that you would be able to sit as a juror on a case like this and listen to both sides and not predetermine the facts?

GOOTMAN: I don't know. I was hoping I'd never get on a case like that again.

At the conclusion of voir dire, appellant's counsel presented a challenge for cause. His concern was that "she had background knowledge that she'd bring in when she had prior jury service. She doesn't like these cases." The trial court denied the challenge without calling Gootman to the bench.

Here, appellant must have shown that the prospective juror had a bias against appellant or "against any of the law applicable to the case upon which the defense is entitled to rely" because of her prior jury service. *See* Tex. Code Crim. Proc. Ann. art. 35.16(a)(9), (c)(2) (West 1989). Gootman's statements, however, demonstrate that serving on a jury in a child abuse case was difficult. She did not know whether she could serve as a juror on a child abuse case but expressed no bias against the defendant or applying the law. Accordingly, we do not find that the trial court abused its discretion in denying this challenge for cause.

14

### (ii) V. Aleman

During voir dire, appellant's counsel presented a hypothetical to determine whether any prospective juror would have a bias against the defendant if a witness called by the State never testified after the defense objected to the witness. His example was as follows:

> I'm going to give you an example. Barbara Bush—Former First Lady Barbara Bush, the State calls her as a witness. "We call Former First Lady Barbara Bush." She comes walking in the room. By God it's her, okay? And I say, "Judge, I need a hearing outside the jury's presence." You're sitting on that jury and you come back in the room and you never see Barbara Bush again, are you going to hold that against myself or more importantly, are you going to hold it against Mr. Sledge over there?

Upon questioning and discussion with several prospective jurors about whether they would take this into account during deliberations, venireperson Aleman responded:

> I think it would bother me, too. I think just because of their status quo—I mean, to me, that's how I would feel. I believe that because she's Mrs. Bush, she walks in, it's okay if she doesn't have to speak or say her part, whereas if I got a subpoena, I walked in here, I'd have to testify.

At the close of voir dire, appellant's counsel challenged Aleman because she "would hold against the Defense if a witness wasn't brought or any evidence." The trial court denied the challenge, responding, "I don't remember that."

Aleman's statement demonstrated a belief that people in a position of privilege are treated differently under the law, not a bias toward appellant. Accordingly, we do not find that the trial court abused its discretion in denying this challenge for cause.

15

*(iii) A. Romo*

Appellant's counsel challenged venireperson Romo for cause because Romo thought, in counsel's words, that appellant would have to "prove his innocence." The trial judge brought Romo before the bench, and the following exchange with appellant's counsel occurred:

[COUNSEL]: Mr. Romo, my notes are in conflict. I just want to check some things out here. You made a statement earlier that kids are your soft spot.

ROMO: That's correct.

[COUNSEL]: You also felt like you'd carry a bias against the defendant in a case like this; is that right?

ROMO: I wouldn't necessarily call it a bias. I would just—I would make a strenuous effort to make sure, you know, what I felt was either guilty or innocence. It would just be a very—I think I would take this case a lot more serious than another case maybe because it has to deal with kids.

[COUNSEL]: Okay. Do you think that—did you feel like—my notes reflected that you said something along the lines you felt like the defendant would have to prove his innocence in a case like this?

ROMO: Absolutely.

[COUNSEL]: Absolutely. And you absolutely want him to do something to prove that he didn't do this?

ROMO: I would like to see any effort made if they feel that they're innocent, that they make that—that call towards me to show that they—

At this point, the Court asked questions of Romo:

[COURT]: Let me get this: You understand the law is that the State has the burden of proving the defendant guilty by a proof beyond a reasonable doubt? Can you follow that law?

16

ROMO:      Yes, I can.

[COURT]:   But part of that law is the defense doesn't have to prove a thing.

ROMO:      I'm aware they don't have to prove a thing.

[COURT]:   And that's—we give an instruction that says the defendant has an absolute right not to testify and you cannot hold it against him, cannot consider it in your deliberations.  Can you follow that part?

ROMO:      I can follow that, yes, I can.

[COURT]:   So that seems to be a conflict.

ROMO:      Well, just as far as it's a personal question that would be something that—you know, I couldn't lie and say that that wouldn't affect me. But as far as my judgment goes, I wouldn't allow that to cloud my judgment.

[COURT]:   So you can base your decision on the evidence you heard—

ROMO:      Yes, sir.

[COURT]:   —and holding the State to its burden of proof—

ROMO:      Yes, sir.

[COURT]:   —and not requiring the defendant to prove anything?

ROMO:      No, sir.

[COURT]:   And if he doesn't testify, you aren't going to say, "Oh, he didn't testify so he must be guilty"?

ROMO:      No, sir.  I will go by evidence.

The trial court denied the challenge.

Appellant argues that Romo was beyond rehabilitation after he responded with "absolutely" to the question, "you said something along the lines you felt like the defendant would

17

have to prove his innocence in a case like this?" At that point, appellant contends, Romo should have been excused because he could not follow the law that a defendant has no obligation to put forth proof. *See* Tex. Code Crim. Proc. Ann. art. 35.16(c)(2).

Although Romo made statements that raised the issue of bias, he concluded that he could hold the State to its burden and not require the defendant to prove anything. Furthermore, he distinguished between his personal opinion and his judgment as a juror, stating that he would not allow his personal opinion to cloud his judgment. If a juror vacillates or equivocates on the juror's ability to follow the law, the reviewing court must defer to the trial court's judgment. *Brown v. State*, 913 S.W.2d 577, 580 (Tex. Crim. App. 1996); *Riley v. State*, 889 S.W.2d 290, 300 (Tex. Crim. App. 1993). Because the trial court was in the best position to judge the credibility of the prospective juror's responses, we give deference to the trial court's decision. *Swearingen*, 101 S.W.3d at 99. Romo's later responses support the trial court's finding. Accordingly, we cannot say that the trial court abused its discretion in denying this challenge for cause.

### *(iv) R. Perrone*

Appellant's counsel challenged venireperson Perrone for cause because of an alleged bias against the reasonable doubt standard, which would demonstrate an inability to follow the law. *See* Tex. Code Crim. Proc. Ann. art. 35.16(c)(2). During voir dire, appellant's counsel discussed that the burden of proof is beyond a reasonable doubt. His example was: "Now, if you have 99 reasons to say somebody is guilty and you have one reasonable doubt, that's not guilty. That's what the law says." After a discussion with a few jurors, the State objected on the ground that there is no definition of reasonable doubt. Upon questioning Perrone, the following exchange took place:

18

[COUNSEL]: I apologize, Judge. There is no definition out there. 99 to 1, can you find the person not guilty?

PERRONE: No, I would have to say they're guilty because it's 99 percent.

[COUNSEL]: Even if you still have a reasonable doubt?

PERRONE: The percentages outweigh reasonable doubt.

We disagree with appellant that this demonstrates an inability to follow the law. The court of criminal appeals has dispensed with the requirement of instructing juries on the definition of "beyond a reasonable doubt." *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). It found that the jury could receive such an instruction if the State and defendant agreed to do so, but "the better practice is to give no definition of reasonable doubt at all to the jury." *Id.* "[P]rospective jurors may form their own definitions of proof beyond a reasonable doubt and they are not challengeable for cause based upon the type and amount of evidence they require to reach that level of confidence." *Murphy v. State*, 112 S.W.3d 592, 598 (Tex. Crim. App. 2003) (citing *Howard v. State*, 941 S.W.2d 102, 127 (Tex. Crim. App. 1996)). Here, appellant demonstrated only that counsel's hypothetical definition of "99 to 1" was enough to convince Perrone of proof beyond a reasonable doubt. The record does not further reflect what Perrone's definition of proof beyond a reasonable doubt might be. Thus, we do not find that the trial court abused its discretion in denying this challenge for cause. We overrule appellant's sixth issue.

## CONCLUSION

Because the State concedes that appellant's conviction on both counts constitutes double jeopardy, we reverse the conviction for indecency with a child by contact and order that count

19

dismissed. *Landers v. State*, 957 S.W.2d 558, 560 (Tex. Crim. App. 1997). Concerning the trial court's evidentiary ruling allowing two outcry witnesses to testify, because one witness's testimony went only to the indecency with a child by contact allegation, it would not be outside of the zone of reasonable disagreement for the trial judge to conclude based on the State's proffer that the second witness would testify about a different type of abuse. We cannot say that the trial court's admission of evidence from a second outcry witness constituted an abuse of discretion. We also conclude that the trial court did not err in admitting the testimony of the social worker concerning the mother's and child's statements during an interview at the hospital. In light of the hospital setting and the social worker's narrow role, as an employee of the hospital, to assist the doctor in conducting his medical examination, we find these statements fall under the rule 803(4) exception. *See* Tex. R. Evid. 803(4).

Furthermore, we conclude that the trial court did not err in denying appellant's requests for instructions on the lesser-included offenses of attempt. With evidence presented of either no attempt or more than an attempt, a jury rationally could not find that appellant was guilty only of attempted indecency with a child by contact or attempted aggravated sexual assault. As to the prosecutor's alleged comments on the defendant's failure to testify, the statements were not of such a character that the jury would naturally and necessarily take them to be comments on the defendant's failure to testify. *Caldwell*, 818 S.W.2d at 800. Thus, we do not find that the trial court erred in denying appellant's request for a mistrial. Lastly, appellant has failed to demonstrate that the trial court erred in denying appellant's challenges of four prospective jurors for cause.

20

Accordingly, we reverse count two of the judgment charging appellant with indecency with a child by contact and dismiss that count. We affirm that portion of the judgment convicting appellant of aggravated sexual assault.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed in Part; Reversed and Dismissed in Part

Filed: March 11, 2004

Do Not Publish